IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. MURIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1017 |
| | ) | |
| JAY BRAY, HAROLD LEWIS, WESLEY R. | ) | Judge Fischer |
| EDENS, and RANDAL A. NARDONE, | ) | Magistrate Judge Mitchell |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.   Recommendation

It is respectfully recommended that the motion to dismiss filed on behalf of the defendants (ECF No. 9) be granted to the extent that Plaintiff's claims be limited to the 263 units in the Separation Agreement and denied in all other respects.

II.   Report

Plaintiff, Joseph J. Murin, brings this action against four individuals (Jay Bray, Harold Lewis, Wesley R. Edens and Randal A. Nardone), alleging that they violated the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.12 (WPCL) by refusing to honor his request – made pursuant to a Separation Agreement – to liquidate 525 units of a corporation for which he served as Chief Executive Officer and by rendering the corporation insolvent so that it became impossible for him to exercise his rights.

Presently pending before the Court is a motion to dismiss, filed by the Defendants. Specifically, they argue, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Plaintiff has not and cannot allege that they were officers or agents of his former employer, and thus they do not fall within the scope of persons who made be held liable under the WPCL. In the alternative, they argue that Plaintiff's claim should be limited to the 263 partnership units based on the

Separation Agreement and that it cannot include the value of an additional 262 units that he holds. For the reasons that follow, the motion should be granted to the extent that Plaintiff's claims be limited to the 263 units in the Separation Agreement and denied in all other respects.

Facts

Murin states that he is a highly-skilled executive with extensive experience in the mortgage banking sector, including serving as the President of the mortgage giant Ginnie Mae. (Compl. ¶ 9.)[1] In or about February 2011, Peter Smith (Smith) (who is not a party to this lawsuit) telephoned Murin in Pittsburgh regarding a possible employment opportunity at National Real Estate Information Services, LP (NREIS), which offers title, settlement and appraisal services to the real estate industry. At all relevant times herein, Smith was the managing director of Fortress Investment Group. LLC (Fortress), a private equity firm headquartered in New York City. On or about March 31, 2011, Smith again contacted Murin in Pittsburgh. Smith indicated to Murin that NREIS had just been purchased by the holding company ANC Acquisition General, LP (ANC), and that Murin was being considered for an executive position. (Compl. ¶¶ 10-13.)

Seventy-five percent of ANC is owned by Fortress. The remaining twenty-five percent of ANC is owned by Nationstar Mortgage Holdings, Inc. (Nationstar). (Compl. ¶¶ 15-17 & Ex. A.) Defendants Edens and Nardone are co-founders of Fortress, members of its board of directors, and principals of Fortress. Plaintiff alleges that, at all relevant times herein, Smith was in regular contact with Edens and Nardone via email and acted pursuant to their direction and control. (Compl. ¶¶ 18-19.)

Nationstar, headquartered in Lewisville, Texas, is a national lender and provider of mortgage related services. Defendant Bray is Nationstar's Chief Executive Officer. Defendant

---

[1] ECF No. 1.

Lewis is Nationstar's President and Chief Operating Officer. (Compl. ¶¶ 21-22.)

Following ANC's acquisition of NREIS, Smith's discussions with respect to possible employment for Murin became more frequent and concrete. Smith indicated to Murin that he was being considered for the position of Chairman of ANC. Smith indicated to Murin that as Chairman of ANC, Murin was to train his efforts in acquiring additional companies for ANC's portfolio. Murin was also to generally oversee NREIS and supervise NREIS's CEO, Michael Forgas. (Compl. ¶¶ 23-26.)

In May 2011, Murin was interviewed by Edens, Nardone, and Smith at Fortress's New York City headquarters. Several weeks after the interview, Smith contacted Murin in Pittsburgh and offered Murin the job as Chairman of ANC. On or about June 15, 2011, Murin executed an Employment Agreement, which outlined the terms of Murin's employment. (Compl. ¶¶ 27-29 & Ex. B.) Contemporaneous with executing the Employment Agreement, Murin executed a Partnership Common Unit Award Agreement (Unit Agreement). (Compl. ¶ 30 & Ex. C.)

In July 2011, Smith asked Forgas to resign as NREIS's CEO. ANC then asked and Murin accepted the position of CEO of NREIS. Plaintiff alleges that, at all relevant times, Fortress was a controlling presence at NREIS headquarters which included constant communications with NREIS employees. When not in Pittsburgh, Smith and other Fortress analysts made daily calls to NREIS, monitoring its daily operations and financial performance. Murin and other managers at NREIS also participated in weekly telephone conferences with Nationstar and Fortress employees. At all relevant times, Fortress oversaw NREIS's finance and accounting departments and made all financial decisions. No NREIS employee — including Murin — was empowered to make any material financial decisions with respect to NREIS. (Compl. ¶¶ 31-37.)

On or about May 23, 2012, Murin, Bray, Lewis, and Smith held a meeting at NREIS. Murin was told that, effective May 23, 2012, he was being removed from the position of CEO of NREIS and would assume the new title of Chairman of the Board. It was also explained to Murin that his change in position was not for "cause," as that term is defined in the Employment Agreement. Murin's employment change, he was told, was to "better align" the priorities of NREIS. (Compl. ¶¶ 38-41.)

Murin was given no specifics as to the terms and duties he would assume as Chairman of the Board. Bray instructed Murin to contact him at a later date and Bray would explain to him what his role as Chairman of the Board would entail. Murin placed three unreturned calls to Bray. Murin additionally attempted to ascertain from Smith what the terms and duties of his new position would entail. During one conversation, Smith indicated to Murin that the uncertainty with respect to defining his new duties was the result of Bray and Lewis's inability to reach an agreement. (Compl. ¶¶ 42-46.)

On June 15, 2012, still unaware of the terms or duties related to his new position at NREIS, Murin (through his attorney) sent a letter to ANC seeking clarification. (Compl. ¶ 47 & Ex. D.) Murin received no response to his letter. Plaintiff alleges that, in actuality, following his removal as CEO, he experienced a significant and sustained reduction in his responsibilities. He was not invited to, nor did he attend, any of the daily or weekly meetings conducted by Fortress or Nationstar representatives. He no longer exercised any policy making functions and/or official decision making responsibilities with respect to NREIS. Control of NREIS's day-to-day operations was assumed by Lewis. (Compl. ¶¶ 48-52.)

On August 16, 2012, Murin sent a letter to ANC stating that if he was not reinstated as CEO of NREIS, he would deem his employment terminated, effective September 16. Thereafter,

the parties entered into negotiations which culminated in the execution of a Separation Agreement dated September 10, 2012. (Compl. ¶¶ 53-54 & Ex. E.)

Pursuant to Section 2(a) of the Separation Agreement, Murin was awarded as severance 450 units which vested, under the Awards Agreement, on June 8, 2012. Pursuant to Section 2(b) of the Separation Agreement, Murin was additionally awarded as severance 75 units, which ANC valued at $970.87 per unit on the date the Separation Agreement was executed. As of September 13, 2012, Murin owned a total of 525 vested units. Pursuant to Section (2)(d) of the Separation Agreement, upon appropriate demand by Murin, ANC was to purchase 263 units of Severance for a purchase price of $985.22/unit for an aggregate gross price of $259,112.86. (Compl. ¶¶ 55-58 & Ex. E § 2(a, b, d).)

On January 2, 2013, Murin notified Nardone of his desire to exercise his rights under section (2)(d) of the Separation Agreement and have ANC purchase 263 units at a price of $985.22 per unit. (Compl. ¶ 59 & Ex. F. ) Murin received no response to his letter. On January 23, 2013 Murin wrote another letter to Nardone reiterating his demand to exercise his rights under section (2)(d) of the Separation Agreement, but he received no response to the letter. (Compl. ¶¶ 60-62 & Ex. G.)

Plaintiff alleges that, at the time the Separation Agreement was executed, Defendants knew that NREIS was on tenuous financial footing and that NREIS's future prospects were dire. He contends that, following execution of the Separation Agreement, ANC began transferring NREIS's existing business elsewhere, thereby rendering NREIS insolvent. Plaintiff alleges that Defendants' actions in creating NREIS's insolvency have made it impossible for NREIS to honor his right to all 525 of his vested units. (Compl. ¶¶ 63-65.)

Procedural History

Plaintiff filed this complaint on July 16, 2013. He invokes diversity jurisdiction, 28 U.S.C. § 1332, in that he is a citizen of Pennsylvania; Defendants are citizens of Texas (Bray and Lewis) and New York (Edens and Nardone); and the amount in controversy, excluding interest and costs, exceeds $75,000.000 (ECF No. 1 ¶¶ 1-6). He alleges that Defendants have breached the Separation Agreement and seeks relief under the WPCL for relief, including: $517,240.50 (representing the value of 525 units of Severance); liquidated damages in the amount of 25% of the wages awarded at trial; attorney's fees, expenses and costs; interest; costs of suit; and such other relief as the Court deems appropriate. (Compl. at 9.)

On September 16, 2013, Defendants filed a motion to dismiss (ECF No. 9). Plaintiff filed his brief in opposition on October 8, 2013 (ECF No. 14) and on October 18, 2013, Defendants filed a reply brief (ECF No. 15).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, the Court can examine the Employment Agreement, Unit Agreement, Separation Agreement and letters that Plaintiff sent to Nardone and has attached to the complaint without converting the motion into a motion for summary judgment.

Defendants note that Plaintiff has not named as defendants the business entities that were parties to the Separation Agreement, namely NREIS and ANC, and that the individuals he has named as defendants were not officers or directors of NREIS or ANC. They argue that he cannot state a claim against them under the WPCL to recover the "severance" he alleges he is owed because they are not "officers" or "agents" of NREIS, the entity that employed him. Plaintiff responds that he has alleged that the four Defendants were "agents" and/or "officers" of NREIS who were personally involved in the actions he alleges herein and that the determination of agency is a legal conclusion that cannot be decided in the context of a motion to dismiss.

7

Determining State Law

The Court of Appeals has explained that:

> A federal court under Erie [R.R. Co. v. Tompkins, 304 U.S. 64 (1938)] is bound to follow state law as announced by the highest state court. "If the highest court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." Mosley v. Wilson, 102 F.3d 85, 92 (3d Cir. 1996). Although state intermediate appellate decisions are not automatically controlling, see Paoletto v. Beech Aircraft Corp., 464 F.2d 976 (3d Cir. 1972), the Supreme Court in Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), summarized current practice as follows: "even in diversity cases this Court has further held that while the decrees of lower state courts should be attributed some weight the decision is not controlling where the highest court of the State has not spoken on the point." Id. at 465, 87 S.Ct. 1776 (internal quotation marks and citations omitted). In West v. A.T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940), the Supreme Court further held that "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).

The WPCL imposes a statutory duty on "every employer" to pay "all wages" due to employees. 43 P.S. § 260.3. Employees may bring a civil action to recover such wages. 43 P.S. § 260.9a. However, "the WPCL does not create a right to compensation .... [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (citations omitted).

The WPCL defines the term "employer" as follows:

**"Employer."** Includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.

43 P.S. § 260.2a. Defendants argue that, despite the plain language of the statute indicating that all officers and agents of a corporation are liable for violating the WPCL, the Pennsylvania

8

Superior Court has held on several occasions that: "To hold an 'agent or officer' personally liable for unpaid wages, evidence of an active role in decision making is required." International Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc., 856 A.2d 102, 105 (Pa. Super. 2004) (citing Mohney v. McClure, 568 A.2d 682, 686 (Pa. Super. 1990), aff'd mem., 604 A.2d 1021 (Pa. 1992)). See also Hirsch v. EPL Technologies, Inc., 910 A.2d 84, 88 (Pa. Super. 2006), appeal denied, 920 A.2d 833 (Pa. 2007). In Mohney, an employee sought unpaid wages after his employer filed for bankruptcy and sued Robert Hanak, the employer's corporate counsel and secretary. The court held that the plaintiff produced no evidence that Hanak had been actively involved with corporate policy-making decisions or his advisement on pay or compensation and granted Hanak's motion for summary judgment. In Theatrical Stage Employees, a labor union sued Michael Feight, the Production Manager for Mid-Atlantic, based on his actions of seeking and obtaining laborers for a concert, but offered no evidence that he was a corporate officer or shareholder, that he had any authority to write checks, that he had any role in the decision-making process or that he gave advice to Mid-Atlantic's president regarding hiring, pay or compensation. Therefore, the Superior Court upheld the compulsory non-suit entered by the trial court following a non-jury trial.

In this case, however, Plaintiff has alleged that the four Defendants did have active roles in the actions he describes. He alleges that: Nardone and Edens interviewed him for his position at NREIS, ultimately were involved in the decision to hire him and remained actively involved in the decisions regarding his employment and compensation, that their private equity firm (Fortress) made all financial and accounting decisions with respect to NREIS and Nardone was specifically named in the Separation Agreement as the person who was to receive Plaintiff's notices on behalf of ANC; that Bray and Lewis personally met with him and modified the terms

9

of his employment by removing him from his position as CEO and Bray indicated that he would determine Murin's new terms of employment but refused to return calls to provide this information.

Thus, this case is unlike the cases Defendants cite, both because he makes these allegations and because at the motion to dismiss stage they must be accepted as true. See Bowers v. NETI Technologies, Inc., 690 F. Supp. 349, 355 (E.D. Pa. 1988) (denying motion to dismiss when plaintiffs alleged that individual defendants were agents of a corporate defendant and had directly participated in the decision to terminate plaintiffs' employment and to withhold contractually agreed upon separation payments due); White v. Ciber, Inc., 2007 WL 3491272, at *4 (M.D. Pa. Nov. 14, 2007) (granting motion to dismiss two individuals because plaintiff failed to allege that vice president/area director or account executive had any role in the decision not to reimburse him for training expenses).

Defendants appear to be arguing that they cannot be held liable because they were not technically "officers" or "directors" of NREIS or ANC. Rather, they are senior executives at Fortress and Nationstar, "separate companies levels removed from NREIS." (ECF No. 15 at 1.)

However, as Plaintiff notes, the WPCL extends to "agents" of an employer and agents are not limited to officers and directors. The fact that Defendants were not officers or directors of NREIS or ANC does not address the question of whether they were agents of these corporate entities. Moreover, their invocation of Pennsylvania's "strong presumption against piercing the corporate veil," Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co., 53 A.3d 53, 59 n.7 (Pa. Super. 2012), appeal denied, 69 A.3d 599 (Pa. 2013), in inapposite.[2] Whatever the common law presumption might be in the absence of a specific statute, the fact is that the Pennsylvania

---

[2] Allegheny Energy is a breach of contract case arising out of a coal sale, and does not involve the WPCL.

10

legislature, in enacting the WPCL, has pierced the corporate veil by extending liability to officers and agents of employers. The question to be determined in this case is whether Defendants were acting as agents of NREIS and ANC. This is a legal determination that cannot be made in the context of a motion to dismiss.

In addition, Plaintiff has alleged that Defendants rendered NREIS insolvent so that it was impossible for it to comply with his request for redemption of the vested units. This allegation does not depend upon Defendants acting as agents for NREIS; indeed, it presupposes that they were acting contrary to NREIS's obligations under the Separation Agreement. Therefore, Defendants' argument for dismissal should be rejected.

<u>Limitation of Claims</u>

In the alternative, Defendants argue that Plaintiff's claim should be limited to the 263 partnership units based on the Separation Agreement and that it cannot include the value of an additional 262 units that he holds. They note that his own letters acknowledged that he could seek to redeem only 263 units, not the full 525 that he owns. Plaintiff responds that these documents were composed before the breach of the Separation Agreement and that he cannot make a legal admission with respect to Defendants' duties under a contract.

As noted above, the WPCL does not create a statutory right to wages; rather it provides a statutory remedy when the employer breaches a contractual right to earned wages. <u>Harding v. Duquesne Light Co.</u>, 882 F. Supp. 422, 427-28 (W.D. Pa. 1995) (Ambrose, J.). Plaintiff entered into a Separation Agreement which specifically allowed him to require ANC to purchase 263 units. Although the Separation Agreement provided him with 262 additional units, it did not provide a means for him to require ANC to purchase them. He has not pointed to any other contract that would require ANC or NREIS to purchase any additional units, therefore he has no

11

right to be enforced under the WPCL with respect to them.

Plaintiff argues that the Court should supply a reasonable time in which the contractual obligation to purchase the additional units must be performed.[3] However, as Defendants observe in their reply brief, the issue is not that the contract lacks a specific time of performance with respect to the purchase of the additional units, but rather that there is no obligation on ANC to purchase the units at any time.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendants (ECF No. 9) be granted to the extent that Plaintiff's claims be limited to the 263 units in the Separation Agreement and denied in all other respects.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by November 13, 2013. Any party opposing the objections shall file a response by November 27, 2013. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: October 30, 2013

---

[3] To the extent that Plaintiff is arguing that the Court should supply a reasonable time in which purchase of the 263 units as described in the Separation Agreement should be performed, Defendants have not argued that the contract is unenforceable because it does not provide a time of performance, so this argument need not be addressed.